UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**ACCESS FOR THE DISABLED**, a
Florida not for profit corporation, and
**PATRICIA KENNEDY**, Individually,

        Plaintiffs,

Case No: 8:13-cv-3158-EAK-TGW

v.

**EDZ, INC.,**

        Defendant,
_____/

## PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM
## WITH PREJUDICE

Based on the authorities cited below, Plaintiffs, Access For The Disabled, Inc., and Patricia Kennedy move this Court dismiss the counterclaim with prejudice.

**I. INTRODUCTION.**

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983), *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008). The primary, and perhaps singular, reason public places are beginning to comply with the 20-year old obligations of the ADA is because of private enforcement suits. *See*, *Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied*, *Chipotle Mexican Grill, Inc., v. Antoninetti,* ___ U.S. ___, 2011 WL 645276 (79 USLW 3514,

1

April 18, 2011). To encourage that private enforcement, Congress provided that prevailing plaintiffs are entitled to recover their attorney's fees, costs and litigation expenses. Needless to say, plaintiffs and the attorneys who represent the disabled are "not pleasantly received," by violators of the law. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974): As another court was far more blunt in describing the reaction as one of "vitriolic hostility." *Mallory v. Harkness*, 923 F.Supp. 1546, 1555 (S.D. Fla. 1996).

On November 20, 2013, Patricia Kennedy and Peter Lowell went to the Subway involved in this case, ordered food, paid the bill, and left. The receipt has been filed with the Court [D.E. 13-1, p. 7]. Ms. Kennedy is disabled. She, and Access for the Disabled, Inc., an advocacy group of which she is a member, filed suit under the Americans With Disabilities act 42 U.S.C. § 12181 *et seq.* and Florida Accessability Code asking that the Defendant be ordered to eliminate the barriers to access Ms. Kennedy encountered at its restaurant. As the Defendant freely concedes, this is not its first brush with the ADA. Despite the notice afforded by a separate lawsuit against a different restaurant it operates, the Defendant "*admit[s]* that Subway #468 has modifications which could be made to improve access under the ADA" [D.E. 22, p.2, ¶ 9](italics added), and that it knew about those violations since "October 2013" [D.E. 22, p. 9, ¶ 44]. The Defendant in short, is not only an admitted violator of the ADA but among the many businesses who "do not regularly comply." *A. Joseph Raetano v. Kally K's Inc.,* WL 651808, at *7 (M.D. Fla. 2009).

Despite its admission that its restaurant is a place of public accommodation [D.E. 22, p. 1, ¶ 3; D.E. 1, p.1, ¶ 3], and, therefore, open to all, and, as the receipt establishes, Ms. Kennedy or Mr. Lowell indisputably bought food, the Defendant now purports to retroactively

2

revoke what it describes as the "implied consent or licence" [D.E. 22, p. 9] afforded to the general public where Ms. Kennedy and Mr. Lowell are concerned thus rendering them "trespassers." The Defendant then asserts that Ms. Kennedy, Access for the Disabled, Inc., Peter Lowell, and Thomas Bacon, P.A.[1], are part of a "scheme" [D.E. 22, p. 5. *et. seq*.] to "extort" [D.E. 22, p. 10] money from the Defendant and are therefore subject to damages under The Florida Civil Remedies for Criminal Practices Act, F.S.A. 772.01 *et. seq*.

Engaging in conduct Congress and the Courts have explicitly approved simply cannot give rise to liability.

## II. ARGUMENT

### A. The Defendant Cannot Retroactively Manufacture A Trespass Case.

The Defendant's restaurant is a place of public accommodation. Under the ADA, it cannot exclude, or refuse to serve, the disabled, 42 U.S.S. 12182(a).[2] It likewise cannot exclude those "associated with" the disabled 42U.S.C. 12182(b)(1(E).[3] That is, Peter Lowell. The Defendant does not even claim that, at the time, it told Ms. Kennedy or Mr. Lowell that they were not welcome because they intended "to cause harm, destruction, or otherwise damage the restaurant," or were "loiter[ing] without an intent to patronize" [D.E. 22, p. 9, ¶ 57]. The

---

[1] Peter Lowell and Thomas Bacon, P.A. are not parties to this action and not involved in this motion.

[2] "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

[3] "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

Defendant likewise does not claim, at any time, that Ms. Kennedy or Mr. Lowell were asked to leave. As the receipt establishes, the Defendant actually *served* them. The basic – and unstated – legal premise on which Count I of the counterclaim depends is the assumption that the law allows the owner of a place of public accommodation to manufacture a claim against customers by purporting to retroactively revoke the "implied consent or licence" [D.E. 22, p. 9, ¶ 56 & 59] afforded to the public at large. There is no law that allows that tactic, and, therefore, no trespass.

Further, the counterclaim never says just how it was that Ms. Kennedy and Mr. Lowell intended "to cause harm, destruction, or otherwise damage the restaurant." In the absence of such an allegation, there is no basis on which to conclude that either exceeded the scope of the "implied consent or licence" the Defendant concedes it extended. Were one to infer that the conduct about which the Defendant complains is Ms. Kennedy's intent to enforce her rights under the ADA, such a position overlooks the fact that enforcing the ADA is something the disabled have a right to do and, as the Eleventh Circuit held in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir 2013), intent is irrelevant.

Even were one to assume that the law allowed, and the facts justified, the kind of claim the Defendant seeks to advance, it has failed to allege any damages. Again inferring that the "damages" to which the Defendant refers are attorney's fees, any fees incurred stem from the Defendant's admitted non-compliance with the ADA and not the lawful actions of Ms. Kennedy or Mr. Lowell. On top of that, the Defendant does not allege that it has paid so much as a dime in fees to anyone.

For the reasons set forth above, Count I of the Counterclaim fails to state a cause of action. There is no law to support the position the Defendant advances. The facts conclusively

4

establish that Ms. Kennedy and Mr. Lowell were, in fact, customers. Because there is no amendment that can cure the foregoing defects, Count I of the Counterclaim should be dismissed, with prejudice.

**B. The Defendant Has No Claim under Chapter 772, F.S.**

Count II of the Counterclaim says that the Plaintiffs have violated the Florida Civil Remedies for Criminal Practices Act, Chapter 772 F.S. That law, specifically, F.S.A. 772.104, creates a cause of action for any person "injured by reason of any violation of the provisions of s. 772.103." The latter section, in turn, makes it unlawful for any person, "with criminal intent" to receive "any proceeds ... derived from a pattern of criminal activity. Finally, F.S.A. 772.11 requires that "Before filing an action for damages under this section, the person claiming injury must make a written demand ..."

The Counterclaim does not so much as allege that the Plaintiffs received anything from any activity, criminal or otherwise, let alone did so with "criminal intent." The Counterclaim also fails to allege that the Defendant was injured by "reason of" the Plaintiffs' receipt of "proceeds" derived from " a pattern of criminal activity." Finally, the Defendant fails to allege giving the statutorily required notice.

Those issues aside, the lynchpin of the claim advanced in Count II is the assertion that the Plaintiffs have engaged in "a pattern of activity to commit extortion" [D.E. 22, p. 10, ¶ 65].

Florida law defines extortion in the following language:

> Whoever, either verbally or by a written or printed communication, maliciously *threatens* to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose

>another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree ...

F.S.A. 836.05(italics added).

According to the Counterclaim, Access for The Disabled and Patricia Kennedy did not "threaten" to sue the Defendant – they did it. The Defendant does not so much as claim that the Plaintiffs "threatened" to do anything let alone allege that any threat was made "maliciously" as the very law the Defendant quotes [D.E. 22, p. 5, ¶ 35] unquestionably requires. Under the plain language of the statute, the Defendant has not alleged a crime and, therefore, has not, and, more important, cannot, state a cause of action.

### C. Litigation Cannot Constitute "Extortion."

As the Tenth Circuit has said, "Extortion is the antithesis of litigation as a means of resolving disputes." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003). "Recognizing abusive litigation as a form of extortion, the Court went on, "would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim," *id*. In cases involving the RICO Act, 18 U.S.C. 1961, *et. seq.,* the analogue of Chapter 772, F.S., the Federal Courts have widely held that the threat of filing, or actual filing, of a civil action, meritless or not, does not constitute a predicate act necessary to establish a RICO claim. *Raney v. Allstate Insurance Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003). *U.S. v. Pendergraft*, 297 F.3d 1198, 1207-08 (11th Cir. 2002)(even if premised on fabricated evidence or false testimony); *Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir. 1994); *First Pacific Bancorp, Inc. v. BRO*, 847 F.2d 542, 547 (9th Cir. 1988); *I.S. Joseph*

*Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984). G-1 *Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 266 (S.D. N.Y. 2001)*; Grauberger v. St. Francis Hospital*, 169 F.Supp.2d 1172, 1178-79 )N.D. Cal. 2001); *Bulow v. Auersperg*, 657 F.Supp. 1134, 1143-44 (S.D. N.Y. 1987). In *Raney, supra,* the Eleventh Circuit said: "We found ourselves troubled by any use of this federal criminal statue to punish civil litigants. [citation omitted.] We noted that allowing litigants to be charged with extortion would open yet another collateral way for litigants to attack one another."

The Plaintiffs are before this Court seeking to enforce a Federal law. Applying the foregoing line of cases, the Defendant would have no claim even if everything it claims, or, for that matter, even imagines, were true.

### D. THE LITIGATION PRIVILEGE BARS THE DEFENDANT'S CLAIM

While labeling its pleadings a counterclaim and third party claim, the Defendant proceeds to lump all of the parties together incorporating by reference whole pages on material into what it labels the "The Instant Action." While the rationale is less than clear, the Defendant predicates the liability of the Plaintiffs, in part, on the actions of Thomas Bacon, P.A., taken "*After* filing suit" [D.E. 22, p. 7, ¶ 37i] and "*Upon* suit ...." [D.E. 22, p. 8, ¶ 47]. Further, Thomas Bacon, P.A. "threatened *continued* prosecution ...." [D.E. 22, p. 8, ¶ 48](italics added). Under Florida law conduct undertaken during the course of a lawsuit is shielded by the litigation privilege and cannot give rise to liability. *Daniel Delmonico, et al., v. Arthur Rodgers Traynor, Jr., et al.*, 116 So. 3d 1205 (Fla. 2013); *Echevarria, Mccalla, Raymer, Barrett & Frappier, etc., et al., v. Bradley Cole, etc*., 950 So. 2d 380 (Fla. 2007). To the extent that the liability of the

Plaintiffs is predicated on the actions of Thomas Bacon, P.A., the Defendant cannot have a claim.

### III. CONCLUSION

The Defendant has admitted in the pleadings filed in this case that its restaurant does not comply with the ADA. Ms. Kennedy encountered those barriers and, as the Eleventh Circuit has made abundantly clear in *Marod, supra*, has every right to enforce her right to equal access even if she went there for no purpose other than to enforce the ADA or, in the Defendant's parlance, "harm" the restaurant. The fact that the Defendant doesn't like it does not give rise to any cause of action. The Defendant cannot convert customers into "trespassers" retroactively, and cannot turn the filing or prosecution of a lawsuit into extortion. The Defendant, in short, does not have, and cannot have, any claim.

The Plaintiffs respectfully submit that the Counterclaim should be dismissed, with prejudice, and that they should be awarded their attorney's fees.

**I HEREBY CERTIFY** that, on May 8, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

*/s/ Philip Michael Cullen, III, Esq.*
Fla. Bar No: 167853
Thomas B. Bacon, P.A.
621 South Federal Highway, Suite Four
Fort Lauderdale, Florida 33301
Telephone; (954) 462-0600
Facsimile: (954) 462-1717
cullen@thomasbaconlaw.com